NO. 07-07-0317-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

SEPTEMBER 8, 2008
_____

SAMMY SALAZ,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2007-414,821; HON. JIM BOB DARNELL, PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant, Sammy Salaz, attacks his conviction for aggravated assault through two issues. He contends that the trial court erred in overruling his 1) request for a jury instruction on the supposed lesser-included offense of deadly conduct, and 2) objection to evidence of an extraneous bad act. We affirm the conviction.

*Background*

The victim, Joshua Yelvington, went to the residence of appellant in the early morning hours to confront his former girlfriend Misti Campo. Yelvington, who was carrying

a bat at the time, knocked on the window of appellant's bedroom, and identified himself for Misti. She came to the door, and the two began to argue. There is no evidence that Yelvington ever used or threatened to use the bat. Nonetheless, appellant eventually came out the front door with a gun in his hand. When Yelvington saw the gun, he took several steps backward and then turned around and began to walk toward the vehicle in which he had arrived. Yelvington then heard appellant say, "You fucked up white boy," felt a "touch" on the back of his head, heard a bang, and saw a flash. Two of Yelvington's friends took him to the hospital where he was diagnosed as having a gunshot wound to the head.

*Issue 1 - Instruction on Lesser-Included Offense*

Appellant argues in his first issue that the court should have submitted an instruction on the purportedly lesser-included offense of deadly conduct. We disagree and overrule the issue.

To be entitled to an instruction on a lesser-included offense, some evidence must show, among other things, that if the accused is guilty, he is guilty only of the lesser offense. *Rousseau v. State,* 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993). Here, appellant was charged, via the indictment, with aggravated assault. The indictment read that he "intentionally, knowingly, and recklessly cause[d] bodily injury to JOSHUA YELVINGTON, by shooting . . . [him] with a deadly weapon, and did then and there use a deadly weapon, to wit: a firearm . . . ." Like assault, the crime of deadly conduct also includes a mens rea of recklessness. TEX. PEN. CODE ANN. §22.05(a) (Vernon 2003). And, one commits that crime if, with the requisite mental state, he engages in conduct that places another in imminent danger of serious bodily injury. *Id.*

2

That appellant placed a handgun next to Yelvington's head is undisputed, as is the fact that the firearm discharged when it was so located. Appellant, however, contends that because there was some evidence that the wound suffered was caused by Yelvington being struck by the body of the handgun as opposed to the bullet emanating from it, he was entitled to the instruction at issue. We disagree with that contention and will explain why. Assuming *arguendo* that showing the wound was caused by striking the victim with the firearm itself could render the crime nothing more than deadly conduct, we note that appellant cites us to no evidence indicating that using the weapon as a club could cause the type of wound suffered by Yelvington. Moreover, the wound was located at the center "occipital region" of his head, or as the police officer confirmed, the rear base of the skull. To the extent that several witnesses testified that appellant struck his victim with the gun, they described it as hitting Yelvington "over the head" or on the "side" of the head, not on the back of the skull.[1] So, unless we assume evidence not before us, and ignore the medical testimony diagnosing the injury as a "[g]unshot wound to the head," we find no legitimate basis supporting appellant's contention. That is, we are unable to conclude that the wound was caused by being struck with the gun itself, as opposed to being shot, and the record failed to illustrate that if appellant did anything, it was only deadly conduct (*i.e.* simply striking appellant with the gun).

---

[1]Yelvington himself testified that appellant "touched" the back of his skull with the handgun before hearing the gun shot several seconds later. The touch was described as light, and again, we were cited to no evidence suggesting that a touch can result in a centimeter head wound.

3

*Issue 2 - Extraneous Offense*

Next, appellant complains of the trial court's failure to sustain his objection to testimony of an extraneous bad act. That act consisted of his offering a witness drugs in exchange for a ride about a month before shooting Yelvington. We overrule the issue.

Assuming *arguendo* that the trial court erred, we find the error harmless. This is so because the matter of drugs was interjected into the trial elsewhere without objection. Indeed, many of the witnesses were accused of being involved with narcotics at one time or another. So, it is rather difficult to say that appellant was singled out or exposed to more limelight by the accusation. To this, we add evidence (also before the jury) that 1) appellant had a criminal record and had been imprisoned, 2) uncontroverted medical testimony depicting the wound as being caused by a gun shot, and 3) the uncontested testimony about appellant placing a firearm next to Yelvington's head and pulling the trigger. Simply put, we cannot conclude from the record before us that any substantial right of appellant was jeopardized or affected by the admission of the testimony.

Having overruled each issue, we affirm the judgment of the trial court.


Brian Quinn
Chief Justice

Do not publish.

4